IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THOMAS HANNON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:09-CV-66-N |
| | § | |
| DAVID L. NEVITT, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## <u>ORDER</u>

This Order addresses several motions and objections: (1) Defendant David L. Nevitt's motion for a new trial and renewed motion for judgment as a matter of law [Doc. 185], (2) Defendants Jerry Dodd and Randy Sundquist's motion for a new trial and renewed motion for judgment as a matter of law [187], (3) Plaintiff Thomas Hannon's motion for attorneys' fees [176], (4) Nevitt, Dodd, and Sundquist's (collectively "Defendants") objections to Hannon's two bills of costs [183 and 184], and (5) Hannon's objection to Sundquist's bill of costs [182].

This is an unusual case where video evidence shows police lied to put Hannon in jail wrongfully for ten months. The Court therefore (1) denies Nevitt's motion for a new trial and judgment as a matter of law, (2) denies Dodd and Sundquist's motion for a new trial and judgment as a matter of law, (3) grants in part and denies in part Hannon's motion for attorney fees, (4) sustains in part and overrules in part Defendants' objections to Hannon's bills of costs, and (5) overrules Hannon's objections to Sundquist's bill of costs.

## I. THE TRIAL, THE VERDICT, AND DEFENDANTS' MOTIONS

According to the evidence introduced at trial, Defendants arrested Hannon at a Dallas hotel, pursuant to a validly issued probation revocation warrant. Dodd completed the police report documenting Hannon's arrest, basing that report in part on Nevitt's asserted observations. According to the report, Nevitt saw Hannon carrying a black leather bag. Upon searching the bag, Dodd found that it contained a firearm as well as a substance that appeared to be methamphetamine. Dodd filled out the police report reflecting that Hannon was seen in possession of the bag. Sundquist tested the substance in the bag and found that it was indeed methamphetamine. Hannon was charged with possession of methamphetamine and with being a felon in possession of a firearm. Though he proclaimed his innocence, Hannon was detained for over ten months awaiting trial.

Immediately before Hannon's trial was scheduled to begin, Hannon's defense counsel showed the assistant district attorney prosecuting the case a surveillance video from the hotel where Hannon was arrested. The video shows that a person other than Hannon was holding the black leather bag containing the gun and the drugs and that at no time immediately before Hannon was arrested did he have possession of the bag. Nevitt, therefore, contrary to his own claim and contrary to Dodd's police report, could not have seen Hannon carrying the bag. After viewing the video, the assistant district attorney concluded that there was no probable cause to prosecute Hannon, and the two charges against him were dismissed.

Hannon subsequently sued Nevitt, Dodd, Sundquist, two other Dallas Police officers, and the City of Dallas in this Court under 42 U.S.C. § 1983 and Texas state law, asserting

various claims against them. The Court dismissed several of these claims, including all claims against the officers other than Defendants and all claims against the City of Dallas. *See* Order, Mar. 17, 2011 [114]. Hannon presented his remaining federal and state claims – for unreasonable seizure and malicious prosecution in violation of the Fourth Amendment as incorporated against the states by the Fourteenth Amendment and for malicious prosecution in violation of Texas state law – to a jury at trial. The jury rendered a verdict. With respect to Hannon's federal claim, the jury found that Nevitt and Dodd, but not Sundquist, violated Hannon's federal constitutional right to be free from unreasonable seizure and that Nevitt and Dodd violated this right with malice or willful or callous and reckless indifference to the safety and rights of others. Court's Charge to Jury [hereinafter Jury Charge] [170] 7–10. As to the state claim, the jury determined that all three Defendants maliciously prosecuted Hannon. *Id.* at 11. It also found, however, that Dodd and Sundquist had official immunity for their malicious prosecution. *Id.* at 12. Finally, it concluded that the harm to Hannon from the malicious prosecution resulted from malice. *Id.* at 13.

The jury awarded Hannon damages for mental anguish in the amount of $45,000 and for wrongful confinement in the amount of $48,500. The jury also awarded Hannon punitive damages against Nevitt in the amount of $75,000 and against Dodd in the amount of $500. The Court entered a final judgment in accordance with the verdict. *See* Final J. [175]. The Court taxed costs (1) against Nevitt and Dodd and in favor of Hannon, and (2) against Hannon and in favor of Sundquist. *See id.* at 2.

ORDER – PAGE 3

Before the verdict, Defendants filed motions for judgment as a matter of law. *See* Nevitt's Mot. J. Matter Law [167]; Dodd & Sundquist's Mot. J. Matter Law [168]. The Court denied both motions. *See* Order, May 4, 2012 [174]. Defendants now renew these motions and move for new trials. Additionally, Hannon moves for attorneys' fees and costs pursuant to 42 U.S.C. § 1988. Finally, Hannon and Sundquist have both submitted bills of costs pursuant to the Court's final judgment and 42 U.S.C. § 1920, and the parties opposing each of these bills have objected.

## II. DEFENDANTS ARE NOT ENTITLED TO NEW TRIALS OR TO JUDGMENT AS A MATTER OF LAW

### A. *Standard of Review for Motions for New Trials*

Defendants' motions for new trials are pursuant to Federal Rule of Civil Procedure 59, which provides that a court may grant a new trial on some or all issues "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1). A "district court has discretion to grant a new trial . . . when it is necessary to do so 'to prevent an injustice.'" *Gov't Fin. Services One Ltd. P'ship v. Peyton Place, Inc.*, 62 F.3d 767, 774 (5th Cir. 1995) (quoting *United States v. Flores*, 981 F.2d 231, 237 (5th Cir. 1993)). A court may grant a new trial if, for instance, the verdict was against the great weight of the evidence, the trial was unfair, prejudicial error was committed during the trial, or damages were excessive. *See Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). "Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and

the burden of showing harmful error rests on the party seeking the new trial." *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999) (quoting *Del Rio Distrib., Inc. v. Adolph Coors Co.*, 589 F.2d 176, 179 n.3 (5th Cir. 1979)).

### B. Standard of Review for Motions for Judgment as a Matter of Law

Defendants also move the Court to reconsider its decision denying them judgment as a matter of law. *See* Order, May 4, 2012 [174]. Rule 50(b) allows a party to renew a motion for judgment as a matter of law that it filed under Rule 50(a). FED. R. CIV. P. 50. The standard for granting both motions is the same. *See* 9B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2537 (3d ed. 2008) (collecting cases). Judgment as a matter of law is proper when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a); *see also Foradori v. Harris*, 523 F.3d 477, 485 (5th Cir. 2008) ("[W]hen a case is tried by a jury, a Rule 50(a) motion is a challenge to the legal sufficiency of the evidence."). "This will only occur if 'the facts and inferences point so strongly and overwhelmingly in the movant's favor' that jurors could not reasonably have reached a contrary verdict." *Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012) (quoting *Brennan's Inc. v. Dickie Brennan & Co.*, 376 F.3d 356, 362 (5th Cir. 2004)). In reviewing the evidence, a court must draw all reasonable inferences in favor of the nonmoving party, must not make credibility determinations or weigh the evidence, and must disregard all evidence favorable to the moving party that the jury is not required to believe. *Brennan's, Inc.*, 376 F.3d at 362. "A jury verdict must stand unless there is a lack of substantial evidence, in the light most favorable to the successful

party, to support the verdict." *Am. Home Assur. Co. v. United Space Alliance, LLC*, 378 F.3d 482, 487 (5th Cir. 2004) (citing *Liberty Mut. Ins. Co. v. Falgoust*, 386 F.2d 248, 253 (5th Cir. 1967)).

### C. The Court Denies Nevitt's Motion

Nevitt argues that he is entitled to a new trial or judgment as a matter of law for six reasons. Each argument is unavailing.

### 1. There Were No Errors in the Jury Charge. –

Nevitt first alleges that the jury charge contained several errors. "[D]istrict courts have substantial latitude in crafting jury instructions." *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 578 (5th Cir. 2004). The Court concludes that the charge in this case was free from error.

First, Nevitt challenges the charge's Question No. 1 and the accompanying instructions. This question asks whether each defendant "deprive[d] Hannon of his constitutional right to be free from unreasonable seizure due to prosecution without probable cause." Jury Charge 7. Nevitt contends that Hannon did not assert an unreasonable seizure claim and that he did not present evidence of such a claim at trial.

The Court concludes that Hannon did indeed assert a Fourth Amendment claim for unreasonable seizure. In his complaint, Hannon unquestionably brings this claim. *See* Am. Compl. [52] ¶ 24 (alleging violation of, among other things, Fourth Amendment because Hannon "suffered unreasonable seizure of his person in the form of a prolonged confinement in the Dallas County Jail"). The pretrial order, however, trumps the complaint. *See Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 206 (5th Cir. 1998) ("It is a well-settled rule

ORDER – PAGE 6

that a joint pretrial order signed by both parties supersedes all pleadings and governs the issues and evidence to be presented at trial.").  "A trial court has great discretion in interpreting a pretrial order."  *Hall v. State Farm Fire & Cas. Co.*, 937 F.2d 210, 213 (5th Cir. 1991).  According to the pretrial order in this case, Hannon asserts that "his rights were violated when the Defendants knowingly caused [him] to be detained for ten (10) months . . . for possession of methamphetamine and firearms."  Joint Pretrial Order [165] 1. In listing the alleged violations of his rights, he includes violations of the Fourth Amendment, the Fourteenth Amendment, and 42 U.S.C. § 1983.  *Id.*  The Court concludes, based on these passages, that the pretrial order sufficiently asserts an unreasonable-seizure claim under the Fourth Amendment, as incorporated against the states in the Fourteenth Amendment, and actionable under 42 U.S.C. § 1983.  *See Fed. Land Bank Ass'n of S. Ala., FLCA v. H & H Worldwide Fin. Serv., Inc.*, 354 F. App'x 85, 87 (5th Cir. 2009) (unpub.) (finding no abuse of discretion where district court found defendant liable for civil conspiracy even though pretrial order "did not explicitly state that the [plaintiff] was bringing a claim for civil conspiracy against [the defendant]"); *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, Civ. A. No. 96-4023, 1997 WL 767685, at *3 (E.D. La. Dec. 10, 1997) (finding claim not expressly mentioned in pretrial order implicit in that order); *Hall Dadeland Towers Assocs. v. Hardeman*, 736 F. Supp. 1422, 1433 n.10 (N.D. Tex. 1990) (same).

Hannon, moreover, presented evidence of the unreasonable seizure of his person at trial.  Specifically, he testified that he was held in prison for over ten months.  Trial tr. vol. 4 [204], 277:13–16.  Moreover, an assistant district attorney assigned to Hannon's case

testified that the police report, based on Nevitt's alleged observations, established probable cause to hold Hannon, *id.* at 7:12–16, but that the video directly contradicted Nevitt's alleged observations and eliminated that probable cause. *Id.* at 21:8–11. This evidence is sufficient to prove that Nevitt intentionally deprived Hannon of his Fourth Amendment right to be free from unreasonable seizure.

Second, Nevitt challenges Question No. 1 because "the phraseology used in the Charge is the functional equivalent of a malicious prosecution claim." Nevitt's Mot. New Trial [185] 5. The question and the accompanying instructions twice reference Hannon's "right to be free from unreasonable seizure due to prosecution for a crime without probable cause." Jury Charge 7. Though the question and instructions mention prosecution without probable cause, they clearly state that the right under consideration in the question is Hannon's "constitutional right to be free from unreasonable seizure." *Id.* Hannon's allegation all along was that the unreasonable seizure occurred *because of* the prosecution without probable cause, and the charge properly explains that allegation. It does not erroneously conflate the two separate torts.

Third, Nevitt argues that the charge did not include certain instructions and issues Nevitt requested. "[D]istrict courts have substantial latitude in crafting jury instructions." *Kanida*, 363 F.3d at 578. A court's refusal to give a requested jury instruction constitutes reversible error if the requested instruction (1) was a substantially correct statement of the law, (2) was not substantially covered in the charge as a whole, and (3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously

impaired the party's ability to present a given claim or defense. *Travelers Cas. and Sur. Co. of Am. v. Ernst & Young LLP*, 542 F.3d 475, 489 (5th Cir. 2008) (quoting *Kanida*, 363 F.3d 568, 578 (5th Cir. 2004)); *United States v. McClatchy*, 249 F.3d 348, 356 (5th Cir. 2001).

In this case, Nevitt asserts that the Court's refusal to include his requested instructions led to an "improper verdict." He does not explain why he believes this to be the case, however. Further, he does not assert – as must be the case for an exclusion of a proposed instruction to constitute reversible error – that the charge did not substantially cover the excluded instructions or that their exclusion impaired his ability to present a defense. The Court, nevertheless, examines each instruction Nevitt claims the Court excluded erroneously.

Nevitt's first objection is to the exclusion of Requested Instruction No. 24, which states that a section 1983 violation must be intentional, not negligent. *See* Nevitt's Requested Jury Instructions and Interrogatories [hereinafter Nevitt's Requested Instructions] [146] 12–13. The charge's Question No. 1, however, substantially covers this point; in fact, the question uses the word "intentionally" no fewer than five times. Jury Charge 7–8.

Nevitt also points to the Court's failure to include Requested Instruction No. 28. This requested instruction explains that if there is probable cause to arrest a person for one offense, the Fourth Amendment permits that a person be actually arrested and charged with a different offense. Nevitt's Requested Instructions 14. The Court's instruction to the jury that "Hannon's arrest on the parole violation warrant was proper," Jury Charge 9, substantially covers the content of this requested instruction. Moreover, the alleged Fourth

Amendment violation in this case relates to Hannon's time in jail on false charges, not his arrest. This requested instruction, then, also did not concern an important point in the trial.

Next, Nevitt challenges the Court's refusal to submit Requested Instructions Nos. 30, 31, and 32, regarding qualified immunity. Nevitt's Requested Instructions 15–18. He also objects to the Court's decision to include the qualified immunity issue within the question on the section 1983 violation rather than dedicating a separate question to qualified immunity. The Court's Question No. 1, however, incorporates the qualified immunity defense and substantially covers Nevitt's proposed qualified immunity instructions. Jury Charge 7–9. Moreover, the Court's inclusion of the qualified immunity defense in the section 1983 question tracks Fifth Circuit Pattern Jury Charge 10.1. Doing so did not seriously impair Nevitt's ability present his qualified immunity defense.

Nevitt, finally, protests that the Court did not include his Requested Instruction No. 40. This requested instruction would have allowed the jury to consider that the State of Texas in certain instances provides compensation of up to $50,000 for every year a person is in prison under a wrongful conviction. Nevitt's Requested Instructions 23. The Court's decision not to include this instruction, however, did not seriously impair Nevitt's ability to present any of his defenses. Moreover, the instruction would be irrelevant: the charges against Hannon were dropped, and he thus was not convicted.

In sum, the Court's decisions regarding Nevitt's requested instructions were not erroneous, either because the charge substantially covered the requested instructions or because the excluded instructions did not concern an important point in the trial such that the

ORDER – PAGE 10

failure to instruct the jury on the issue seriously impaired Nevitt's ability to present a defense.[1]

Fourth, Nevitt objects to the charge's separate question regarding malice, Question No. 5, in addition to its instruction on malicious prosecution, Question No. 3. Nevitt claims that the combination of the two questions placed too much emphasis on the issue of malice as it relates to Nevitt's liability. The malice question, however, was necessary in order to properly allow the jury to consider the issue of punitive damages. *See* TEXAS PATTERN JURY CHARGES: GENERAL NEGLIGENCE, INTENTIONAL PERSONAL TORTS, § 6.4 comment (2010) ("For [malicious prosecution] causes of action accruing on or after September 1, 1995, a separate issue for exemplary damages must be submitted . . .), § 4.2B (defining malice and noting that "[m]alice is . . . a ground for recovery of exemplary damages"). Moreover, the Court defined the word "malice" differently in its questions regarding malicious prosecution and malice. Furthermore, the definition of "malice" in Question No. 5 specifies that the definition applies "[f]or the purposes of Question No. 5." Jury Charge 13. Because of the need for the jury to determine the issue of malice separately as it relates to both malicious

---

[1]Dodd and Sundquist also object to the Court's refusal to include certain instructions. They, however, point only to the Court's decision not to include Dodd and Sundquist's Requested Instructions Nos. 16, 17, and 18. Dodd & Sundquist's Proposed Jury Instructions & Interrogatories [hereinafter Dodd & Sundquist's Proposed Instructions] [140] 13–16. These requested instructions are almost verbatim copies of Nevitt's Requested Instructions Nos. 30, 31, and 32. The Court finds no error in its exclusion the three proposed instructions from Dodd and Sundquist for the same reasons it found no error in its exclusion of Nevitt's corresponding proposals.

prosecution and punitive damages and because of the separate definitions, the Court determines that the inclusion of both questions was proper.

Fifth, Nevitt contends that there was no evidence of malice introduced at trial, so the malice issue should never have appeared in the charge. The charge defines the term "malice" for the purpose assessing punitive damages as "a specific intent by a defendant to cause substantial injury or harm to plaintiff." Jury Charge 13. Based on the evidence adduced at trial, the jury could have properly concluded that Defendants acted with malice under this definition. For instance, Hannon testified that the police report was fabricated. Trial Tr. vol. 4, 292:13–17. Moreover, the police report states that an arresting officer saw Hannon with the black leather bag, but the hotel's surveillance video demonstrates that this could not have been the case. The jury could have properly inferred from these facts that Nevitt was untruthful and that by way of this misrepresentation he had a specific intent to cause Hannon substantial harm. This instruction was thus proper.[2]

Sixth, Nevitt maintains that the charge should not have allowed recovery for mental anguish damages because the evidence at trial did not support such a recovery. As the Court concludes below, however, Hannon's evidence regarding mental anguish damages was sufficient. *See infra* section II.C.6. It was therefore proper for the Court to include this issue in the jury charge.

---

[2]Likewise, the jury could have concluded that Dodd knew Nevitt's claim to have seen Hannon holding the bag was false and that Dodd's consequent untruthful police report constituted malice as defined in the charge.

ORDER – PAGE 12

Seventh, and finally, Nevitt asserts that the item of damages entitled "wrongful confinement" was improper because (1) Hannon's claims concerned malicious prosecution and unreasonable seizure, not wrongful confinement, and (2) the charge does not define "wrongful confinement." As to the first issue, Hannon's unreasonable seizure claim is predicated upon his confinement in jail for wrongful reasons, i.e., with lack of probable cause. Inclusion of that item of damages was therefore appropriate. Regarding the second issue, the Court determines that the term "wrongful confinement" required no definition because that definition was sufficiently clear. *See United States v. Nguyen*, 493 F.3d 613, 624 (5th Cir. 2007) ("A trial court need not define specific statutory terms unless they are outside the common understanding of a juror or are so technical or specific as to require a definition." (quoting *United States v. Chenault*, 844 F.2d 1124, 1131 (5th Cir. 1988))); *Thompson v. Lynaugh*, 821 F.2d 1054, 1060 (5th Cir. 1987) (finding no error in trial court's leaving "deliberately" and "reasonable doubt" undefined because meaning was sufficiently clear). It was abundantly clear to the jury that Hannon's theory of the case was that he wrongfully sat in jail for ten months. Moreover, the Court is aware of no case requiring a charge to define this term. The Court consequently concludes that the charge was proper in regard to the "wrongful confinement" item of damages.

In sum, Nevitt's attacks on the jury charge are unsuccessful. The Court concludes that the charge was free from error. Nothing in the charge entitles Nevitt to a new trial or to judgment as a matter of law.

**2.   *Hannon's Federal Claim Was Not a Freestanding Claim for Malicious Prosecution.*** – According to Nevitt, Hannon's section 1983 claim is not cognizable because the Fifth Circuit has held that "no such freestanding constitutional right to be free from malicious prosecution exists." *Castellano v. Fragozo*, 352 F.3d 939, 953 (5th Cir. 2003) (en banc).  The Fifth Circuit further explained this rule as follows:

> The initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection – *the Fourth Amendment if the accused is seized and arrested*, for example, or other constitutionally secured rights if a case is further pursued.  Such claims of lost constitutional rights are for violation of rights locatable in constitutional text, and some such claims may be made under 42 U.S.C. § 1983.  Regardless, they are not claims for malicious prosecution and labeling them as such only invites confusion.

*Id.* at 953–54 (emphasis added); *accord Deville v. Marcantel*, 567 F.3d 156, 169–70 (5th Cir. 2009) (per curiam).  It is true that the Court previously characterized Hannon's federal claim as a malicious prosecution claim.  *See* Order, March 17, 2011, at 9.  Nonetheless, Nevitt is not entitled to a new trial or to judgment as a matter of law on this point for two reasons.

First, Hannon's claim is not "freestanding."  It is, rather, a claim for unreasonable seizure of his person in violation of the Fourth Amendment.  A fair reading of Hannon's claims bears out this conclusion.  For instance, on the very first page of one of his briefs, Hannon identified this claim in a heading as his "Federal 'Malicious Prosecution' Claim." Pl.'s Resp. Nevitt's Rule 50(a) Mot. J. Matter of Law [172] 1.  His use of quotation marks suggests that he knew that this terminology is shorthand for something else.  Under that heading, in fact, Hannon argued that his arrest without probable cause and subsequent

incarceration were "a clear violation of his Fourth Amendment protection against unreasonable seizure." *Id.* As noted above, the Fifth Circuit observed in *Castellano* that, while malicious prosecution itself is not cognizable under section 1983, "[t]he initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection – the Fourth Amendment if the accused is seized and arrested, for example." 352 F.3d at 953. This is precisely what Hannon alleged happened in this case: the malicious prosecution brought about a violation of the Fourth Amendment when Hannon was held in jail awaiting trial without probable cause. In other words, as the Court noted on the record in response to Dodd and Sundquist's objections to the jury charge, the "malicious prosecution" label served as "shorthand" for these cognizable violations. Trial Tr. vol. V [205], 156:7–13.

Second, it is clear from the jury charge that Hannon's malicious prosecution claim was pursuant to state law, whereas his unreasonable seizure claim was pursuant to federal law. Most tellingly, Question No. 3, which is the only question asking whether Defendants are liable for malicious prosecution, submits the Texas pattern jury charge. *See* Jury Charge 11; TEXAS PATTERN JURY CHARGES: GENERAL NEGLIGENCE, INTENTIONAL PERSONAL TORTS, § 6.4 (2010). By way of contrast, Question No. 1 notes that Hannon's unreasonable seizure claim implicates section 1983, and the question discusses the United States Constitution. *See* Jury Charge 7. Question No 3, on the other hand, contains no reference to section 1983 or federal law in relation to the malicious prosecution claim. *See id.* at 11.

Whatever the parties' and the Court's "shorthand" before and during the trial, then, the jury decided the malicious prosecution cause of action under state law, not federal law.

It is true, in short, that a plaintiff cannot assert a naked federal claim for malicious prosecution. Hannon did not do so here, however. His federal claim was for unreasonable seizure in violation of the Fourth and Fourteenth Amendments; furthermore, the jury never found Nevitt liable for malicious prosecution in violation of federal law or the federal Constitution. The Court acknowledges that Hannon's use of the shorthand designation "malicious prosecution" for his Fourth Amendment claim was imprecise. This confusion, however, is not grounds for awarding Nevitt a new trial or judgment as a matter of law on this point. *See Castellano*, 352 F.3d at 954 (noting that using "malicious prosecution" label to refer to cognizable violations of section 1983 "invites confusion" but not forbidding its use in such cases).

    3. ***Nevitt Is Not Entitled to Qualified Immunity.*** – The jury decided at trial that Nevitt was not entitled to qualified immunity, but Nevitt maintains that he is in fact so entitled. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Supreme Court in *Saucier v. Katz* set out a two-prong test for determining whether an official has qualified immunity. 533 U.S. 194. *Saucier* requires a court to consider (1) whether the charged conduct, viewed in light most favorable to the plaintiff,

would amount to a violation of federal law, and (2) whether the right was clearly established at the time of the alleged governmental misconduct. *See id*. at 201; *accord Cantrell v. City of Murphy*, 666 F.3d 911, 919 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 119 (2012). A Court may address the prongs in either order. *Pearson*, 555 U.S. at 236.

In this case, Hannon accuses Nevitt of violating section 1983 by depriving Hannon of his right to be free from unreasonable seizure under the Fourth Amendment. As to the first *Saucier* prong, the facts Hannon alleged and the facts he introduced at trial were sufficient for a jury to find a violation of that right. *See supra* section II.C.1 (referencing facts from trial showing Hannon's ten-month seizure with no probable cause). As to the second prong, there can be no question that the right to be free from unreasonable seizure by way of confinement in jail without probable cause was clearly established in 2007. *See Whittington v. Maxwell*, 455 F. App'x 450, 459 (5th Cir. 2011) (unpub.) ("No reasonable police officer could have thought that it was objectively reasonable in the light of clearly established Fourth Amendment law to detain an individual in jail for over fifty days, pursuant to the officer's fabricated charges, so that the officer could fulfill his own personal vendetta against that individual."). Hannon's claim, as supported by the video, was that Nevitt deliberately lied about Hannon and the bag. Deliberate lies are not protected by qualified immunity. Therefore, the Court concludes that the jury was not wrong in concluding that Nevitt was not entitled to qualified immunity. He is not entitled to a new trial or judgment as a matter of law on this issue.

> **4.    *Hannon Sufficiently Proved a Texas State Law Malicious Prosecution Claim.* –** Nevitt next claims that Hannon did not prove his state law malicious prosecution claim.  Under Texas law, a plaintiff asserting malicious prosecution must prove that (1) a criminal prosecution was commenced against him, (2) the defendant initiated or procured that prosecution, (3) the prosecution terminated in the plaintiff's favor, (4) the plaintiff was innocent of the charges, (5) the defendant lacked probable cause to initiate the prosecution, (6) the defendant acted with malice, and (7) the plaintiff suffered damages.  *See Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997).

According to Nevitt, Hannon failed to prove the fifth element of his malicious prosecution claim because Nevitt had arguable probable cause to believe Hannon had committed the offenses.  "The probable cause inquiry asks only whether the complainant reasonably believed that the elements of a crime had been committed based on the information available to the complainant before criminal proceedings began."  *Id.* at 519.  Hannon introduced sufficient evidence to allow the jury to conclude that Nevitt did not reasonably believe that Hannon had committed the possession offenses with which he was charged.  As discussed above, the assistant district attorney prosecuting the case determined after watching the video that there was not probable cause to prosecute Hannon.  Trial Tr. vol. 4, 21:8–11.  The jury could have credited this testimony and concluded that Nevitt, who claimed to have seen something directly contrary to the video's evidence, was lying and could not have reasonably believed that the elements of the possession offenses had been

committed.  Nevitt is accordingly not entitled to a new trial or judgment as a matter of law on this issue.[3]

    **5. *Nevitt Is Not Entitled to Official Immunity.*** – The jury determined that Nevitt was not entitled to official immunity for malicious prosecution.  Jury Charge 12.  Nevitt argues that this determination is incorrect as a matter of law.  Official immunity is an affirmative defense, so the defendant must establish each of the defense's elements.  *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994).  Government employees are entitled to official immunity from suit (1) arising from the performance of their discretionary duties (2) in good faith, as long as they are (3) acting within the scope of their authority.  *Id.*  "[A] court must measure good faith in official immunity cases against a standard of objective legal reasonableness, without regard to the officer's subjective state of mind."  *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997) (citing *Chambers*, 883 S.W.2d at 656).

    The jury could have concluded in this case that Nevitt did not act in good faith.  Nevitt claimed to have seen Hannon holding the black leather bag, but the hotel video showed that this was impossible.  The jury could have reasonably concluded, based on this evidence, that Nevitt deliberately lied and did not act in good faith.  Such a conclusion is not against the great weight of the evidence.  Nevitt, consequently, is not entitled to a new trial or judgment as a matter of law on this issue, which is an element of a defense of official immunity.

--------

    [3]Likewise, the jury could have concluded that Dodd could not have reasonably believed Nevitt's story about seeing Hannon with the bag, or, alternatively, that Dodd and Nevitt actively colluded to imprison Hannon wrongly.

**6. *Hannon's Testimony Included Sufficient Evidence of Mental Anguish.*** – Finally,

Nevitt maintains that Hannon did not present sufficient evidence to support the jury's award

of damages for mental anguish. *See* Jury Charge 16. In this Circuit, it is often the case that

"a claimant's testimony alone may not be sufficient to support anything more than a nominal

damage award." *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 938 (5th Cir. 1996).

A plaintiff must prove damages for mental anguish to a "degree of specificity which may

include corroborating testimony or medical or psychological evidence." *Id.* (citing *Carey v.

Piphus*, 435 U.S. 247, 264 (1978)). Corroborating testimony regarding mental anguish

damages, however, is not necessary in every case. *See, e.g.*, *Oden v. Oktibbeha Cnty., Miss.*,

246 F.3d 458, 470–71 (5th Cir. 2001) (upholding mental anguish damages based only on

plaintiff's testimony concerning his "stress, sleeplessness, betrayal, and shame"); *Migis v.

Pearle Vision, Inc.*, 135 F.3d 1041, 1046 (5th Cir. 1998) (upholding mental anguish damages

based on plaintiff's testimony regarding low self-esteem, financial hardship, anxiety attacks,

stress, and sleeplessness). Here, it does not take an expert to tell that sitting in jail for ten

months on false charges can cause mental anguish.

The Court concludes that Hannon's uncorroborated testimony about his mental

anguish is sufficient to support the jury's award. Hannon testified as to his grief, grave

concern about his future, and despair during his ten and a half months in jail. Specifically,

Hannon's testimony includes evidence that he had problems sleeping, Tr. Vol 4, 294:18–19

that he felt in jail that he was "screwed" and "in trouble," *id.* at 282:17–19; that "[i]t was

hell" to be in jail for a crime he did not commit and to have no one believe him, *id.* at 307:16–20; and that his jailers "damn sure [didn't] treat [him] like a person." *Id.* at 308:1–2. Hannon's testimony thus includes sufficient evidence to support the jury's award of damages for mental anguish, and Nevitt is accordingly not entitled to a new trial or judgment as a matter of law as to these damages.

   ***7. Conclusion as to Nevitt's Motion.*** – Based on Hannon's allegations against Nevitt and the evidence Hannon introduced at trial, Nevitt is not entitled to a new trial or judgment as a matter of law. The Court accordingly denies Nevitt's motion.

## D. The Court Denies Dodd and Sundquist's Motion

   Dodd and Sundquist's motion repeats Nevitt's motion in most respects. To the extent that Dodd and Sundquist's arguments mirror Nevitt's, the Court denies them for the reasons stated above.[4] As the jury rendered separate verdicts as to all three Defendants, however, the Court addresses each of the arguments particular to Dodd and Sundquist in turn.

   ***1. Dodd Is Not Entitled to Qualified Immunity.*** – Dodd, like Nevitt, is not entitled to qualified immunity.[5] As explained above, under the first *Saucier* prong Hannon alleged and introduced evidence showing that he was detained for over ten months in violation of his

---

   [4]Specifically, the Court concludes that (1) the jury charge was free from error, *see supra* section II.C.1; (2) Hannon's section 1983 claim was for unreasonable seizure and was thus not a freestanding malicious-prosecution claim, *see supra* section II.C.2; and (3) Hannon's evidence of mental anguish damages is sufficient to support the verdict, *see supra* section II.C.6.

   [5]The jury determined that Sundquist did not deprive Hannon of his constitutional right to be free from unreasonable seizure, so this argument does not apply to Sundquist.

Fourth Amendment right to be free from unreasonable seizure.  *See supra* section II.C.3.
And because Dodd wrote the police report indicating that Hannon committed the possession
offenses, Dodd's actions  – in the light most favorable to Hannon – indeed deprived Hannon
of those rights.  The jury was entitled to disbelieve Dodd's protestation of innocence and
accept Hannon's theory that Dodd was a part of Nevitt's scheme.  As to the second prong,
the right to be free from unreasonable seizure of one's person was clearly established in
2007.  *See id*.  The jury's conclusion that Dodd was not entitled to qualified immunity is thus
not against the great weight of the evidence or contrary to law.  Dodd is accordingly not
entitled to a new trial or judgment as a matter of law on this point.

     *2.  **The Verdict as to Dodd Is Not Irreconcilable.** –* Dodd contends that the jury's
verdict is irreconcilable as it relates to him.  A "judge has a duty to attempt to reconcile a
jury's apparently inconsistent responses to special interrogatories."  *Carr v. Wal-Mart Stores,
Inc.*, 312 F.3d 667, 670 (5th Cir. 2002).  In fact, a court "must attempt to reconcile the jury's
findings, by exegesis if necessary."  *Ellis v. Weasler Eng'g, Inc.*, 258 F.3d 326, 343 (5th Cir.
2001) (quoting *Gallick v. Balt. & Ohio R. Co.*, 372 U.S. 108, 119 (1963)).  "Only if no way
to reconcile answers exists are they inconsistent."  *Smith v. Tidewater Marine Towing, Inc.*,
927 F.2d 838, 842 (5th Cir. 1991) (citing *Gallimore v. Mo. Pac. R. Co.*, 635 F.2d 1165, 1172
(5th Cir. 1981)).  To determine whether two answers in a verdict are irreconcilable, a court
must decide "whether the answers may fairly be said to represent a logical and probable
decision on the relevant issues as submitted, even though the form of the issue . . . may have

been the likely cause of the difficulty and largely produced the apparent conflict." *Griffin*

*v. Matherne*, 471 F.2d 911, 915 (5th Cir. 1973) (citing *R. B. Co. v. Aetna Ins. Co.*, 299 F.2d

753, 760 (5th Cir. 1962)).  A court looks beyond the questions themselves and to the court's

instructions where necessary. *Alverez v. J. Ray McDermott & Co., Inc.*, 674 F.2d 1037, 1040

(5th Cir. 1982).  Finally, "the court must view the evidence in the light most favorable to

upholding the jury's decision by a finding of consistency." *Ellis*, 258 F.3d at 343 (citing

*Hiltgen v. Sumrall*, 47 F.3d 695, 701 (5th Cir. 1995)); *see also* 9B CHARLES ALAN WRIGHT

& ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2510 (collecting cases

demonstrating "considerable latitude employed by the courts in this regard").

  In this case, the jury found that Dodd intentionally deprived Hannon of his

constitutional right to be free from unreasonable seizure without probable cause in violation

of section 1983.  Jury Charge 7.  In so doing, it must have concluded that Dodd was not

entitled to qualified immunity – i.e., that "he knowingly violated the law regarding the

plaintiff's constitutional rights." *Id.* at 9.  The jury also found that Dodd maliciously

prosecuted Hannon, *id.* at 11, but that Dodd had official immunity for that malicious

prosecution. *Id.* at 12.  In finding that Dodd had official immunity, the jury necessarily

determined that he acted in good faith, meaning "that a reasonable peace officer could have

believed that his conduct was lawful in light of the clearly established law and the

information possessed by the defendant at the time the conduct occurred." *Id.*  Dodd

maintains that the jury's grant of official immunity is at odds with its denial of qualified

immunity because Dodd could not logically have acted both with and without objective legal reasonableness.  Dodd & Sundquist's Mot. New Trial [187] 19.

Based on the language of the jury charge, however, the Court disagrees with Dodd's characterization of the jury's decision and concludes that the verdict is not irreconcilable. The jury could have read the charge as setting out a subjective standard with respect to qualified immunity and an objective standard with respect to official immunity.  As to federal immunity, the charge instructed the jury, in pertinent part, that  "[i]f . . . you find from a preponderance of the evidence that plaintiff has proved for each defendant . . . that . . . he *knowingly* violated the law regarding the plaintiff's constitutional rights, you must find for the plaintiff against that defendant." Jury Charge 9 (emphasis added).  This text tracks Fifth Circuit Pattern Jury Instruction 10.2.  Moreover, it is virtually identical to language proposed by Dodd and Sundquist.  *See* Dodd & Sundquist's Proposed Instructions 15.[6]  Dodd did not object to this language.  *See generally* Trial Tr. vol. V, 144:14–158:3.  The jury found that Dodd did *not* have qualified immunity.  To reach this conclusion, the jury could have interpreted this language as inquiring about Dodd's subjective state of mind.[7]  Following

_____

[6]Dodd and Sundquist proposed the following language: "If . . . you find from a preponderance of the evidence that Hannon has proved . . . that Dodd, Nevitt, and Sundquist . . . knowingly violated the law regarding Hannon's constitutional rights, you must find for Hannon."  Dodd & Sundquist's Proposed Instructions 15.

[7]In fact, the charge's language with respect to the substantive federal claim bolsters this reading.  The unreasonable-seizure question asked the jury to decide "whether a reasonable person would believe that a crime had been committed given the facts *as the complainant honestly* and reasonably believed them to be before the criminal proceedings were initiated."  Jury Charge 8 (emphasis added).  This language tracks the Texas pattern

from this interpretation, the jury could have concluded based on the trial testimony that Dodd did not subjectively believe Nevitt's claim to have seen Hannon with the bag and that, consequently, he *knowingly* violated the law with respect to Hannon's constitutional rights.

Turning to official immunity under state law, the charge requires that "a defendant must show that a reasonable peace officer could have believed that his conduct was lawful in light of the clearly established law and the information possessed by the defendant at the time the conduct occurred." Jury Charge 12. This language, like the qualified-immunity language discussed above, tracks almost verbatim Dodd and Sundquist's proposed jury instructions. *See* Dodd & Sundquist's Proposed Instructions 20 (citing *City of Lancaster v. Chambers*, 883 S.W.2d 650, 656 (Tex. 1994); *Bowles v. Yeganeh*, 84 S.W.3d 252, 254 (Tex. App. – Dallas 2002, no pet.)).[8] Dodd and Sundquist did not object to the language of this question, either. *See* Trial Tr. vol. 5, 157:11–158:1. The question, critically, does not implicate Dodd's subjective belief as to the legality of his conduct. In finding that Dodd did have official immunity, then, the jury determined that an objective, reasonable peace officer

---

jury charge. *See* TEXAS PATTERN JURY CHARGES: GENERAL NEGLIGENCE, INTENTIONAL PERSONAL TORTS, § 6.4. This focus on the complainant's honest belief could have reinforced the jury's perception that a defendant who knowingly violates the plaintiff's rights is not entitled to qualified immunity.

[8]Specifically, Dodd and Sundquist proposed the following: "Dodd, Nevitt, and Sundquist must only show that a reasonable peace officer could have believed that his conduct was lawful in light of the clearly established law and the information possessed by Dodd, Nevitt, and Sundquist at the time the conduct occurred." Dodd & Sundquist's Proposed Instructions 20.

could have believed that his conduct was lawful in light of Nevitt's alleged statement that he saw Hannon with the bag.

Taking these two aspects of the charge's language together, the jury could have concluded that Dodd subjectively believed Nevitt was lying about seeing Hannon with the black bag and that, based on that subjective belief, he could not have thought that Hannon had committed a crime. The jury thus denied him qualified immunity under federal law. At the same time, the jury may have decided that an objective, reasonable officer presented with Nevitt's claim to have seen Hannon with the bag *could have* believed that Nevitt's testimony was true and that filling out a police report based on that testimony was lawful, even if Dodd himself believed otherwise. The jury therefore granted him official immunity under Texas law.

The Court finds, based on this analysis, that the verdict as a whole is a "logical and probable decision," *Griffin*, 471 F.2d at 915, and the Court concludes that its readings of the verdict reasonably reconcile the jury's answers. *See Smith*, 927 F.2d at 842 (5th Cir. 1991) ("Only if no way to reconcile answers exists are they inconsistent."). This conclusion is in line with other cases in which the Fifth Circuit has reconciled seemingly inconsistent verdicts. *See, e.g.*, *Robroy Indus. Inc. v. Schwalbach*, 481 F. App'x 133, 136–37 (5th Cir. 2012) (unpub.) (concluding that jury misunderstood instructions and reading jury's response of "no" to question about liability as "yes"); *Smith*, 927 F. 2d at 841–43 (finding no inconsistency where jury concluded that defendant was not liable but nonetheless

apportioned responsibility for plaintiff's injury and awarded plaintiff damages); *McVey v. Phillips Petroleum Co.*, 288 F.2d 53, 59 (5th Cir. 1961) (harmonizing jury verdict even where apparent conflict was "obvious to the legally trained mind"). The Court thus concludes that, as the verdict is not inconsistent or irreconcilable, Dodd is not entitled to a new trial on this point.[9]

**3. *Conclusion as to Dodd and Sundquist's Motion.*** – The evidence Hannon introduced at trial and the claims he brought against Defendants demonstrate that Dodd and Sundquist are not entitled to a new trial or judgment as a matter of law. The Court therefore denies Dodd and Sundquist's motion seeking that relief.

### III. THE COURT GRANTS HANNON'S MOTION FOR ATTORNEYS' FEES IN PART AND DENIES IT IN PART

#### A. Attorneys' Fees Standard

The "American Rule" requires that litigants foot the bill for their own attorneys' fees absent statutory authority providing otherwise. *See, e.g.*, *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975). Here, Hannon seeks an award of attorneys' fees pursuant to 42 U.S.C. § 1988, which provides, in relevant part, that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs"

---

[9]The Court is aware that, as a matter of substantive law, "Texas law of official immunity is substantially the same as federal qualified immunity law." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 658 (5th Cir. 2004). The question here, however, is not whether the standards are substantively the same, but rather whether the jury on this evidentiary record could answer the actual questions in the charge consistently. As the Court has indicated, on this record, the jury's answers are plausibly consistent.

in a civil rights case.  42 U.S.C. § 1988(b).  A party prevails when it succeeds on "any significant issue in litigation which achieve[s] some of the benefit [it] sought in bringing suit."  *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791 (1989).

In determining an appropriate fee award, courts first calculate a "lodestar" amount by multiplying a reasonable billing rate by the number of hours reasonably spent litigating the successful claim.  *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 284 (5th Cir. 2008); *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983) (federal law); *Gen. Motors Corp. v. Bloyed*, 916 S.W.2d 949, 960 (Tex. 1996) (state law).  This calculation, however, excludes hours spent on "excessive, redundant, or otherwise unnecessary work" and on nonprevailing claims unrelated to successful claims.  *Hensley*, 461 U.S. at 434–35; *see Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006).  A plaintiff must exercise "billing judgment" – usually by writing off unproductive, excessive, or redundant hours – to determine the number of hours reasonably expended.  *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 662 (5th Cir. 2002).  If the plaintiff fails to exercise billing judgment, a court may reduce the hours awarded by a percentage or analyze the submitted bills line by line.  *Id.*

After determining the lodestar, a court may increase or decrease the lodestar amount based on its analysis of twelve factors: (1) the time and labor required to litigate the case, (2) the novelty and difficulty of the questions involved, (3) the skill required to litigate the case, (4) whether taking the case precluded the attorney from other employment, (5) the customary fee for similar work in the community, (6) the fee or percentage of recovery the attorney

quoted to the client, (7) whether the client or case required expedited legal work, (8) the amount involved and results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirabilty" of the case, (11) the nature and length of the attorney-client relationship, and (12) awards made in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974); *see Hensley*, 461 U.S. at 430 (federal law); *Barrera v. Nat'l Crane Corp.*, No. SA-10-CV-0196 NN, 2012 WL 242828 , at *3 (W.D. Tex. Jan. 25, 2012) (using *Johnson* factors to determine attorneys' fees under Texas law). However, the lodestar necessarily "subsumes" some *Johnson* factors. *Hensley*, 461 U.S. at 434 n.9; *Sims v. Jefferson Downs Racing Ass'n, Inc.*, 778 F.2d 1068, 1084 (5th Cir. 1985). The Court need not take into account any subsumed factors when considering whether to enhance the lodestar. *Id.* "There is a 'strong presumption that the lodestar award is the reasonable fee.'" *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012) (quoting *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1044 (5th Cir. 1999)).

### B.  *The Court Modifies Wall's and Palmer's Proposed Lodestars*

Hannon's two attorneys – John E. Wall, Jr. and Scott H. Palmer – have both submitted proposed lodestars.  The Court finds that the proposed lodestars are excessive and modifies them as described below.

*1.  John E. Wall, Jr.* – Wall seeks an hourly rate of $500 and states that he worked 515.05 hours on Hannon's case, yielding a proposed lodestar of $257,525.00.  The Court,

however, reduces both Wall's rate and the number of hours he worked and sets his lodestar at $144,214.00.

First, the Court concludes that Wall did not exercise sufficient billing judgment. The party requesting fees carries the burden of showing the reasonableness of the hours billed. *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006) (citing *Walker v. City of Mesquite*, 313 F.3d 246, 251 (5th Cir. 2002)).

Wall has provided the Court with a chart itemizing the 515.05 hours Wall spent on the case. Dodd and Sundquist point to a number of entries that demonstrate that Wall's work was duplicative, excessive, or unnecessary, and other entries that they claim are insufficiently documented. For instance, they note that Wall claims to have worked for eight hours on responses to Defendants' first Rule 12(c) motions to dismiss but that these responses were virtual copies of one another and were moot in any case. They also assert that any time expended in obtaining an extension to respond to Defendants' Rule 12(c) motions should be disallowed, because the extensions were for Wall's and Palmer's convenience. Additionally, they point out that Wall has submitted time he spent communicating with the media. Wall has not responded adequately to these allegations.

Moreover, Dodd and Sundquist note several irregularities in Wall's records. For instance, Wall asserts that he spent time revising several filings well after they were filed, and he claims to have worked as much as twenty-nine hours in a single day. The Court accepts on its face Wall's response that these irregularities are due to Wall's practice of

recording his time worked at the completion of certain projects and that "not all of these entries were completed on the days in question." Pl.'s Reply Supp. Mot. Attorney Fees [192] 7. The Court notes, however, that this irregular practice means that Wall's representation of the time he worked is suspect, because the itemization does not, by Wall's own admission, accurately reflect the amount of time he spent on each item each day. And if the Court cannot tell from the itemization how long Wall claims he worked on each item each day, it cannot determine whether the overall amount he claims he worked was reasonable.

In light of the deficiencies and irregularities in Wall's itemization, the Court reduces the number of hours for Wall by twenty percent. The Court accordingly calculates Wall's lodestar based on 412.04 hours.

Second, the record provides insufficient support for Wall's proposed hourly rate. The party seeking fees bears the burden of establishing the market rate and should present the court with evidence showing the proposed rate's reasonableness. *See Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996). The appropriate hourly rate is generally established through affidavits of other attorneys practicing in the community. *See Tollett v. City of Kemah*, 285 F.3d 357, 368–69 (5th Cir. 2002). If supporting documentation is lacking, the court may use its own expertise to assess the value of an attorney's services. *See Davis v. Bd. of Sch. Comm'rs of Mobile Cnty.*, 526 F.2d 865, 868 (5th Cir. 1976).

Wall states in a declaration submitted to the Court that a $500 hourly rate is reasonable. He bases his conclusion on his experience level and his knowledge of similarly

situated colleagues' rates.  Though he states that "a variety of surveys" show that hourly rates in the Dallas area are as high as $600 to $1000, he does not state or offer proof that these rates are for work comparable to Wall's work on this case.  Additionally, Wall provides no examples of other attorneys' billing rates or other evidence to support his proposed rate.  On the other hand, Jason G. Schuette, Dodd and Sundquist's attorney, states in a declaration that typical rates for legal representation in police misconduct cases in the Dallas area range from $150 to $350 per hour.  His opinion is aided by his direct knowledge of attorneys' rates.  He points out that Edwin P. Voss, Jr., is compensated at $250 per hour and that this Court has found $250 to be a reasonable hourly rate for Shuette's own legal services on behalf of section 1983 defendants.  Shuette believes the Court should set Wall's hourly rate at $250.

Because Wall has not presented affidavits of other attorneys in the community or any direct evidence outside his own testimony, the Court places a good deal of weight on Shuette's evidence.  Shuette and Wall appear to have similar levels of experience, but Shuette did not indicate when this Court valued his services at $250.  Based on the record and on the Court's evaluation of Wall's experience, the services Wall provided in this case, the Court determines that $350 is a reasonable hourly rate for Wall.

In sum, Wall is entitled to a reasonable number of hours worked of 412.04 and a reasonable hourly rate of $350.  These numbers yield a lodestar of $144,214.00.

    **2. Scott H. Palmer.** – Palmer asserts that he worked 223.55 hours on this case at an hourly rate of $375, and he accordingly proposes a lodestar of $83,831.25. The Court reduces this lodestar to $65,388.38.

    <u>First</u>, Dodd and Sundquist maintain that some of the work Palmer performed was unnecessary and duplicative, for many of the same reasons that Wall's was. Palmer has also not adequately responded to Dodd and Sundquist's assertions. The Court accordingly reduces Palmer's hours by ten percent, yielding a total of 201.20 hours.

    <u>Second</u>, Palmer, like Wall, asserts that $375 is a reasonable rate on account of his personal knowledge and of surveys that he has seen but has not provided to the Court. He does not attach affidavits of other attorneys. Schuette, in light of the factors discussed above in his analysis of Wall's hourly rate, believes that a rate of $200 is an appropriate rate for Palmer. In light of the competing declarations and the Court's own assessment of the situation, the Court determines that a rate of $325 per hour is appropriate.

    Accordingly, the court sets Palmer's lodestar at $65,388.38, the product of 201.20 hours and a $325 hourly rate.

### C. The Court Awards a Multiplier of 1.15

    In his declaration, Wall states that he believes a multiplier of 1.25 is warranted. Again, the burden is on Hannon, as the moving party, to demonstrate the need for an upward adjustment. *See, e.g.*, *Blum v. Stenson*, 465 U.S. 886, 901–02 (1984). Even though the lodestars calculated above are presumptively reasonable, *see Smith & Fuller*, 685 F.3d at

490, the Court determines nonetheless that a multiplier is warranted, but not in the amount Wall seeks.

The Court's lodestar analysis subsumed several of the *Johnson* factors: the time and labor required; the novelty of the issues; the skill required to litigate the case; the customary fee; the amount involved; and the experience, reputation, and ability of the attorneys. Accordingly, the lodestars take these factors into account. Looking then to the other factors, the Court finds that this case was particularly undesirable: section 1983 cases and malicious prosecution cases against law enforcement officers rarely succeed and thus offer little to attract plaintiffs' attorneys. The remaining factors do not alter the Court's analysis of the need for a multiplier. Accordingly, the Court applies a multiplier of 1.15 to Wall's and Palmer's lodestars, yielding fee awards of $165,846.10 and $75,196.63, respectively.

### D. The Court Approves in Part Hannon's Cost Award Under Section 1988

Each of Hannon's attorneys seeks costs under section 1988. Defendants object to a number of the costs. The Court sustains these objections in part and overrules them in part, and it awards $413.14 in costs to Wall and $1178.67 to Palmer under section 1988.

***1. Cost Standard Under Section 1988.*** – The Fifth Circuit has held that section 1988 authorizes recovery of "[a]ll reasonable out-of-pocket expenses, including charges for photocopying, paralegal assistance, travel, and telephone." *Associated Builders & Contractors of La. Inc. v. Orleans Parish Sch. Bd.*, 919 F.2d 374, 380 (5th Cir. 1990). The

Court has discretion to determine whether the expenses are reasonable and hence recoverable. *Id.*

      **2. *The Court Approves Wall's Application for Costs.*** – The costs Wall seeks to recover under section 1988 are appear to be for courier service or other special deliveries and total $413.14. *See* Pl.'s Application Fees, Costs, & Expenses Ex. 2 [176-3]. Most courts to have addressed the question have found courier and delivery costs compensable under section 1988. *E.g.*, *Tolnay v. Wearing*, No. 3-02-CV-1514 (EBB), 2007 WL 3171284, at *2 (D. Conn. Oct. 25, 2007); *Am. Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas Cnty.*, 278 F. Supp. 2d 1301, 1328 (M.D. Fla. 2003); *Lambert v. Fulton Cnty., Ga.*, 151 F. Supp. 2d 1364, 1377–78 (N.D. Ga. 2000); *David C. v. Leavitt*, 900 F. Supp. 1547, 1565 (D. Utah 1995). *But see W. Va. Univ. Hosps., Inc. v. Casey*, 898 F.2d 357, 366 (3d Cir. 1990) (allowing some courier costs but denying others). The Court agrees with the majority position: courier costs are generally reasonable. Moreover, because Hannon's attorneys worked on a contingency basis, they had the incentive to keep costs as low as possible by using courier services only when it was reasonable to do so. Moreover, given that this case has been pending for well over three years, $413.14 in courier service charges is not unreasonable. The Court thus approves Wall's application for $413.14 in costs under section 1988.

      **3. *The Court Modifies Palmer's Application for Costs.*** – Palmer requests $5364.97 in out-of-pocket expenses. Most of the costs Hannon seeks under section 1988, however, are

duplicative of costs he seeks under 42 U.S.C. § 1920, as discussed below. *See infra* section IV. Based on the Court's review of the fee application and the bills of costs, the Court has determined that Hannon's award under section 1920 includes $4186.30 of the costs Palmer requests under section 1988.[10] The Court accordingly declines to award this amount to Hannon twice and reduces Palmer's cost award by $4186.30.

The remaining costs Palmer requests amount to $1178.67: (1) $450 for service of process, (2) $343.67 for additional witness fees,[11] (3) $325 for Westlaw charges, and (4) $60 for parking for trial. The Court deems these costs to be compensable under section 1988.

First, the amount Palmer spent on process servers was a reasonable out-of-pocket expense. It is true that, as discussed below, Hannon would not be entitled to recover this amount under section 1920. *See infra* section IV.B.1. However, "[d]isbursements that are not specifically authorized by statute as taxable costs . . . may be awarded under section 1988." *Tittle v. Raines*, No. 3:99-CV-0478-L, 2002 WL 31757623, at *3 (N.D. Tex. Dec. 3, 2002) (citing cases). The Court concludes that the costs for private process servers, which Palmer documented with receipts, are compensable out-of-pocket expenses under section 1988.

---

[10]Specifically, the overlapping costs are $350 for court fees, $3636.30 for transcript fees, and $200 for witness fees.

[11]It is unclear from the Court's review of Palmer's receipts whether $330 of this amount is more properly considered a witness fee or a fee for service of process. The Court accepts Palmer's own characterization and notes that the Court would award this cost to Palmer under either classification.

Second, the amount Palmer requests for witness fees over and above the amount Hannon requests in his bills of costs is also reasonable, even though it exceeds the amount the Court awards for witness fees below, *see infra* section IV.B.4, because section 1988 is broader than section 1920. *See Tittle*, 2002 WL 31757623, at *3 (awarding witness travel expenses under section 1988 even though such expenses were not compensable under section 1920).

Third, other courts have found charges for Westlaw access to be compensable under section 1988. *E.g.*, *Shepherd v. Dallas Cnty., Tex.*, No. 3:05-CV-1442-D, 2009 WL 977295, at *16 (N.D. Tex. Jan. 22, 2009), *report and recommendation adopted as modified*, No. 3:05-CV-1442-D, 2009 WL 977294 (N.D. Tex. Apr. 10, 2009). This Court agrees. Palmer's submitted costs for legal research qualify as out-of-pocket expenses.

Fourth, and finally, Parking expenses are a subset of travel expenses. The Fifth Circuit has expressly held travel expenses to be taxable. *See Associated Builders*, 919 F.2d at 380. Palmer's parking costs are thus taxable, too.

In sum, the Court approves Palmer's application for costs under section 1988 in the amount of $1178.67.

### E. The Court Awards Hannon Contingent Appellate Fees

An attorneys' fees award may include fees incurred on appeal. *See, e.g.*, *DP Solutions, Inc. v. Rollins, Inc.*, 353 F3d 421, 436 (5th Cir. 2003) (citing *Gunter v. Bailey*, 808 S.W.2d 163, 165–66 (Tex. App. – El Paso 1991, no writ)) (Texas law); *Norris v. Hartmarx*

*Specialty Stores*, 913 F.2d 253, 256 (5th Cir. 1990) (federal law) ("A long and consistent line of Fifth Circuit precedent allows awards of attorneys' fees for both trial and appellate work."). However, the Court must condition the award on an unsuccessful appeal. *See, e.g.*, *DP Solutions*, 353 F.3d 421, 436 (Texas law); *Sundance Minerals, L.P. v. Moore*, 354 S.W.3d 507, 515 (Tex. App. – Ft. Worth 2011, pet. denied) (Texas law); *cf. DeCorte v. Jordan*, 497 F.3d 433, 445 (5th Cir. 2007) (federal law).

Hannon has requested $50,000 in appellate attorneys' fees in the event Defendants appeal to the Fifth Circuit and are unsuccessful. He seeks an additional $100,000 if the Defendants then petition the United States Supreme Court for a writ of certiorari and the writ is granted and affirmed. The Court grants Hannon's requests.

## IV. THE COURT REDUCES HANNON'S COSTS UNDER SECTION 1920

Hannon requests that he be awarded costs in three separate documents: a bill of costs submitted on May 15, 2012 [177] ("First Bill of Costs"), a bill of costs submitted on May 18, 2012 [180] ("Second Bill of Costs"), and their application for fees, costs, and expenses, which the Court addressed above. *See supra* section III. The Court addresses the two bills of costs in this section

### A. Cost Standard Under Section 1920

As a general matter, a prevailing party may recover its costs "unless the court otherwise directs." FED. R. CIV. P. 54(d). The following items are taxable:

> (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. A court may "decline to tax, as costs, the items enumerated in § 1920." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 442 (1987). Whether something is "necessarily obtained for use in the case is a factual determination to be made by the district court," and a district court has "great latitude in this determination." *Fogleman v. ARAMCO*, 920 F.2d 278, 285-86 (5th Cir. 1991). The prevailing party has the burden to establish necessity. *See id.* If Defendants the nonprevailing party does not object to a specific cost, however, the Court will presume the cost is reasonable. *See, e.g.*, *Interstate Contracting Corp. v. City of Dallas*, No. 3:98-CV-2913-M, 2002 WL 236676, at *2 (N.D. Tex. Jan. 31, 2002) ("Plaintiff, as the prevailing party, is presumptively entitled to its costs and Defendant, as the non-prevailing party, bears the burden of overcoming the presumption." (citing *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir. 1985))).

### B. Hannon's First Bill of Costs

Hannon seeks $5297.16 in his first bill of costs. Defendants object to several items in the First Bill of Costs, and Hannon has not responded to these objections. Defendants do not object to the $350 Hannon requests for fees paid to the Clerk of Court.

**1. *Fees for Service of Summonses and Subpoenas.*** – Hannon seeks $780 for service fees, and Defendants object to all of that amount, asserting that Hannon paid the entire amount to private process servers when such servers were unnecessary. The Court declines to tax this cost for two reasons. First, it is duplicative of a similar cost the Court award to Palmer under section 1988. *See supra* section III.D.3. Second, even if it were not duplicative, the Court would sustain Defendants' objection. Absent exceptional circumstances, the costs of private process servers are not compensable under section 1920. *See Cypress-Fairbanks Indep. Sch. Dist. v. Michael F. by Barry F.*, 118 F.3d 245, 257 (5th Cir. 1997). The cost that would have been charged by a Marshal would be compensable under this section, but Hannon offers no proof of what such a fee would have been. *See Auto Wax Co., Inc. v. Mark V Products, Inc.*, No. 3:99-CV-0982-M, 2002 WL 265091, at *1 (N.D. Tex. Feb. 22, 2002) (deducting entire cost of private process server where prevailing party did not indicate cost of service by Marshal). The Court accordingly deducts $780 from the First Bill of Costs.

**2. *Fees for Printed or Electronically Recorded Transcripts.*** – Hannon requests $3650.52 for transcript fees. Defendants object to $365 fo that sum, asserting that the objected-to amount represents the cost of videotaping a deposition. Prior to 2008, the Fifth Circuit held that the costs of video depositions were not compensable. *See, e.g., Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 529–30 (5th Cir. 2001) (citing cases). After the Judicial Administration and Technical Amendments Act of 2008 amended section

1920(2) to its current form, however, "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in [a] case" have been recoverable.  Pub. L. No. 110-406, 122 Stat. 4291, 4292; *see S & D Trading Acad., LLC v. AAFIS Inc.*, 336 F. App'x 443, 450–51 (5th Cir. 2009) (unpub.) (noting change in statutory text); *Beauty Mfg. Solutions Corp. v. Ashland, Inc.*, No. 3:10-CV-2638-G, 2012 WL 4341814, at *8 (N.D. Tex. Aug. 29, 2012), *report and recommendation adopted*, No. 3:10-CV-2638-G, 2012 WL 4354935 (N.D. Tex. Sept. 24, 2012) ("Costs of video depositions are also recoverable under § 1920(2).").  *But see Riojas v. E. W. Exp., Inc.*, No. 2:10-CV-286-J, 2012 WL 678182, at *3 (N.D. Tex. Feb. 29, 2012) (citing pre-2008 statute).  Given the plain text of section 1920(2) in its current form, the Court concludes that costs of video depositions are compensable.  The Court accordingly overrules Defendants' objection to this item.

     *3. Fees for Disbursements and Printing.* – Defendants object to the $75.78 Hannon seeks for disbursement and printing fees.  The Court sustains this objection.  First, these fees are inadequately described.  Because Hannon offers no explanation for the $75.78, the Court cannot determine whether these costs are compensable or not.  *Cf. Abundiz v. Explorer Pipeline Co.*, No. 3:00-CV-2029-H, 2004 WL 1161402, at *5 (N.D. Tex. May 24, 2004), *report and recommendation adopted*, No. 3:00-CV-2029-H, 2004 WL 1373216 (N.D. Tex. June 18, 2004) (finding copy cost not taxable where party seeking reimbursement provided no explanation).  The Court notes that the District's printed bill of costs form includes the following text: "*SPECIAL NOTE:* Attach to your bill an itemization and documentation for

requested costs in all categories." *See, e.g.*, First Bill of Costs 1. Even with this warning, and even after Defendants drew Hannon's and the Court's attention to this lack of specificity, Hannon has declined to provide the Court with an itemization or additional information or documentation explaining these challenged charges. The Court accordingly deducts $75.78 from Hannon's First Bill of Costs.

     ***4. Fees for Witnesses.*** – Of the $227.22 Hannon seeks for witness fees, Defendants object to $27.22. Generally, 28 U.S.C. § 1821 governs compensation and reimbursement of witnesses. Section 1821 provides as follows:

> A travel allowance equal to the mileage allowance which the Administrator of General Services has prescribed, pursuant to section 5704 of title 5, for official travel of employees of the Federal Government shall be paid to each witness who travels by privately owned vehicle. Computation of mileage under this paragraph shall be made on the basis of a uniformed table of distances adopted by the Administrator of General Services.

28 U.S.C. § 1821(c)(2). Defendants object to the allowances because Hannon does not assert that they comply with section 1821: instead of being uniform, the rate per mile varies by witness. Moreover, Hannon does not provide any evidence supporting the distances the witnesses allegedly traveled. Hannon would have been entitled to recover any costs he had submitted in accordance with section 1821, but, because the Court cannot determine what these costs would have been, the Court sustains Defendants' objection and deducts $27.22 from Hannon's First Bill of Costs.

     ***5. Fees for Exemplification and Costs of Copies Where Copies Are Necessarily Obtained for Use in the Case.*** – Defendants object to the $213.64 that Hannon seeks under

this category because, they contend, the claimed expenses are inadequately described and effectively undocumented. The Court disagrees. Hannon provides documentation for these costs in the form of receipts, and Hannon's counsel states in an affidavit that all costs he enumerates were "necessarily performed." Aff. of Scott H. Palmer Supp. Pl.'s First Bill of Costs [178] ¶ 3. The Court notes that a more detailed accounting of the costs would have been preferable, and some courts in this Circuit have declined to tax costs absent itemizations because the courts could not determine whether the costs were necessary. *See, e.g.*, *Kellogg Brown & Root Int'l, Inc. v. Altanmia Commercial Mktg. Co. W.L.L.*, No. H-07-2684, 2009 WL 1457632, at *6 (S.D. Tex. May 26, 2009) (holding counsel's affidavit stating that copies were "necessary" insufficient to prove necessity absent description of documents copied) (citing cases). Failure to provide an itemization, however, does not necessarily bar recovery of these costs. *See United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 574–75 (5th Cir. 2005) (finding no abuse of discretion in district court's award of photocopying costs where prevailing party did not itemize costs, but "counsel made the appropriate declaration under penalty of perjury that the costs were correct and 'necessarily incurred in this action'") (citing *Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 484 (5th Cir. 2002)).

In this case, the Court concludes that the receipts and Palmer's affidavit are sufficient to demonstrate that the claimed photocopying costs were necessarily obtained for use in the case. The Court therefore overrules Defendants' objection to this item.

### 6.  Conclusion as to Hannon's First Bill of Costs. – After the Court's reductions,

Hannon's First Bill of Costs appears as follows:

> Fees of the Clerk: $350
> Fees for transcripts: $3650.52
> Fees for witnesses: $200
> Fees for photocopies: $213.64

Accordingly, the total recoverable costs asserted in Hannon's First Bill of Costs total $4414.16.

### C.  Hannon's Second Bill of Costs

In his Second Bill of Costs, Hannon seeks to recover $173.95.  Defendants object to all of these costs.  The Court sustains Defendants' objections.

### 1.  Fees for Service of Summonses and Subpoena. – Hannon seeks $130.95 under

this category.  Defendants object because (1) Hannon paid this sum to a private process server, and (2) Hannon is not entitled to recover this cost because the subpoenaed witness, Donna Hernandez, did not testify at trial.  As the Court noted above, fees paid to private process servers are not compensable absent extraordinary circumstances.  *See Cypress-Fairbanks*, 118 F.3d at 257.  Hannon has not asserted that any extraordinary circumstances exist in this case.  Thus, the Court, without addressing Defendants' second rationale, sustains Defendants' objection and deducts $130.95 from Hannon's Second Bill of Costs.

### 2.  Fees for Witnesses. – Hannon asks to recover $43 for witness expenses for Donna

Hernandez, a witness who did not testify at trial.  "Although courts do not ordinarily allow

fees for witnesses who have not testified at trial, a court may award such a fee if the witness was ready to testify but extrinsic circumstances rendered his testimony unnecessary." *Nissho-Iwai Co., Ltd. v. Occidental Crude Sales*, 729 F.2d 1530, 1553 (5th Cir. 1984). Hannon has offered no evidence that extrinsic circumstances rendered Hernandez's testimony unnecessary. Accordingly, the Court sustains Defendants' objection and deducts $43 from Defendants' Second Bill of Costs. *See Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 891 (5th Cir. 1993), *opinion reinstated in part on reh'g*, 61 F.3d 1113 (5th Cir. 1995) (finding no abuse of discretion in district court's refusal to tax witness fees of expert who did not testify).

     ***3. Conclusion as to Hannon's Second Bill of Costs.*** – The Court sustains all of Defendants' objections to the Second Bill of Costs. Accordingly, the costs listed in the Second Bill of Costs are not compensable, and Hannon is not entitled to recover any of them.

### D.  Conclusion as to Hannon's Bills of Costs

     The Court sustains Defendants' objections in part and overrules them in part. The Court awards costs to Hannon in the amount of $4414.16.

### V.  THE COURT OVERRULES HANNON'S OBJECTIONS TO SUNDQUIST'S BILL OF COSTS

     The Court entered judgment in favor of Sundquist on Hannon's claims against him, and it ordered costs taxed against Hannon and in favor of Sundquist. *See* Final J. 1–2. Pursuant to this judgment, Sundquist seeks $2591.71, all for fees for transcripts necessarily

obtained for use in the case.  Hannon has objected to these costs.  The Court overrules Hannon's objections.

First, Hannon argues that Sundquist's bill of costs does not comply with 28 U.S.C. § 1924, which provides as follows:

> Before any bill of costs is taxed, the party claiming any item of cost or disbursement shall attach thereto an affidavit, made by himself or by his duly authorized attorney or agent having knowledge of the facts, that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed.

28 U.S.C. § 1924.  Hannon notes that Sundquist's attorney, Jason G. Schuette, did not attach an affidavit to his bill of costs, and Hannon argues that the Court should therefore not allow any costs to be taxed.  But Sundquist signed a declaration, printed on the bottom of the District's preprinted bill of costs form, that he "declare[s] under penalty of perjury that the foregoing costs are correct and were necessarily incurred in this action and that the services for which fees have been charged were actually and necessarily performed." Sundquist's Bill of Costs [181] 1.  Federal law provides that all matters that are permitted to be "supported, evidenced, established, or proved" by an affidavit "may, with like force and effect, be supported, evidenced, established, or proved by [an] unsworn declaration" as long as the affiant subscribes to the statement under penalty of perjury.  28 U.S.C. § 1746.  The Court determines that, due to section 1746, Schuette's declaration suffices to meet the requirement of section 1924.

Second, Hannon notes that Dodd and Sundquist had the same counsel at trial. Hannon asserts that Sundquist has not established that the costs he seeks to have taxed were necessary and separate from the fees incurred in representing Dodd. Hannon, however, points to no case standing for the proposition that Sundquist has the burden to establish this fact. It is difficult to imagine how Schuette could have prepared a defense for Sundquist without access to the transcripts of the depositions of the parties and witnesses in the case. The Court thus concludes that the transcripts were necessarily obtained for use in the case and that consequently their costs are taxable to Hannon.

Third, Hannon asserts that Sundquist did not meet his burden of demonstrating that the deposition costs were necessary. As the Fifth Circuit as held, "[i]f, at the time it was taken, a deposition could reasonably be expected to be used for trial preparation, rather than merely for discovery, it may be included in the costs of the prevailing party." *Fogleman v. ARAMCO (Arabian Am. Oil Co.)*, 920 F.2d 278, 285 (5th Cir. 1991). Moreover, "[w]hether a deposition or copy was necessarily obtained for use in the case is a factual determination to be made by the district court." *Id.* at 285–86. In this case, Sundquist seeks reimbursement for deposition transcripts of parties and witnesses. These depositions could all reasonably be expected to be used for trial preparation. Moreover, Hannon himself states that he "does not dispute that these transcripts were necessary." Pl.'s Objections to Sundquist's Bill of Costs ¶ 5. The Court finds that no further demonstration of necessity is required and concludes that the transcripts were necessarily obtained for use in the case.

Finally, Hannon offers the blanket assertion that the fees Sundquist seeks are not recoverable under section 1920 and that Sundquist failed to prove they were necessarily obtained for use in the litigation.  But section 1920 allows for recovery of printed or electronically recorded transcripts, and, as explained above, the transcripts were necessarily obtained for use in the case.[12]

In sum, the Court overrules each of Hannon's objections to Sundquist's bill of costs. Sundquist is entitled to recover the $2591.71 that he requests in his bill of costs.

### CONCLUSION

The Court (1) denies Nevitt's motion for a new trial and judgment as a matter of law, (2) denies Dodd and Sundquist's motion for a new trial and judgment as a matter of law, (3) grants in part and denies in part Hannon's motion for attorney fees, (4) sustains in part and overrules in part Defendants' objections to Hannon's bills of costs, and (5) overrules Hannon's objections to Sundquist's bill of costs.

As to Hannon's motion for attorneys' fees, the Court awards $165,846.10 to John E. Wall, Jr. and $75,196.63 to Scott H. Palmer.  The Court further awards costs to Hannon's attorneys under section 1988 in the amounts of $413.14 to Wall and $1178.67 to Palmer.

---

[12]Hannon also apparently objects on the grounds that Sundquist's attorney multiplied the proceedings in this case "unreasonably and vexatiously" as contemplated by 28 U.S.C. § 1927.  This statute, however, allows a Court to tax costs to counsel for unreasonable and vexatious litigation and does not provide a basis for Hannon to object to Sundquist's bill of costs.  To the extent Hannon is moving the Court to tax costs to Schuette under section 1927, the Court declines to do so, finding no evidence that Schuette unreasonably and vexatiously multiplied the proceedings in this case.

The Court also awards contingent appellate fees to Hannon's counsel in the amount of $50,000 in the event Defendants appeal to the Fifth Circuit and are unsuccessful, and an additional $100,000 in the event Defendants then petition the Supreme Court for a writ of certiorari and the writ is granted and affirmed. As to the parties' costs under section 1920, the Court orders that costs be taxed (1) against Nevitt and Dodd and in favor of Hannon in the amount of $4414.16, and (2) against Hannon and in favor of Sundquist in the amount of $2591.71.


Signed March 14, 2013.


David C. Godbey
United States District Judge